Good morning, and may it please the Court. My name is Bill Richards. I'm with the Arizona Attorney General's Office. I'm here today on behalf of the Appellant Arizona State Board for Charter Schools. Speak right up. Hold that microphone up just a little bit. Is that better? Speak right up. Okay. Thank you, Your Honor. As I stated, I'm here on behalf of the Appellant Arizona State Board for Charter Schools. With me today is David Garner from the law firm of Lewis & Rocha. He represents the individual charter school appellants. I will be handling the argument for the appellants today. Mr. Garner is here in case the Court has any questions specific to the charter schools. Okay. I would attempt to reserve about three minutes for rebuttal. Sure. Your Honors, the legislative history, the purposes, and the language of the phrase including a public charter school compels the Court to find that Arizona's public for-profit charter schools are included within the elementary and secondary school definitions so that their at-risk and special needs students may obtain access to the federal assistance that Congress intended them to have for their special educational needs. This is an interesting case of statutory construction. It sounds like we get down to what the meaning of the word including is. Is that right? Is that basically the nub of it? I think that is the nub of it, Judge, yes. And it's your contention that including in this instance means and. And or some other expansive term. Yes, Judge. Do you have any case that construes including to mean and or the phrase following including was at least amorphous about or bipolar in terms of its definitional opposition to the word before? Your Honor, I think the closest we come is the American surety case that we cited the Court to. Admittedly, Judge, there aren't a lot of cases out there. And I think that both sides here have probably exhausted the bank of American case law on the definition of including in this type of context. Isn't it correct that even the bulk of the cases that wind up construing including to mean and acknowledge that the general rule is that including means as an example? That's true, Your Honor. The general rule, the majority rule, if you will, would include it or would define it as an illustrative term. However, there are some distinctions in this case that compel the opposite conclusion. The first, Judge, is that the words that flank including in this case are phrases. On one side you have the phrase nonprofit institutional day or residential school. And on the other side you have public charter school. The term public charter school is under the federal language, under the legislative history, is clearly intended to include all charter schools defined under public law as a public institution. The Department conceded as much in their determination where they determined, in fact, that the Arizona charter schools were, in fact, public schools. And, in fact, the legislative history indicates that Congress was attempting to define charter schools not by a definition as to whether they were nonprofit, for-profit, or any other particular corporate form, but whether they constituted under state law a public institution. And because they chose carefully to use the term public charter school, Your Honor, we don't believe there is much ambiguity or any real ambiguity in that size of the equation. Well, let's start with this. Are there both for-profit and nonprofit charter schools in Arizona? Yes, there are, Judge. So in that phrase at the time Judge Martone was construing it in district court, if you look at the words charter school at that moment and, indeed, this moment, it could include both. It does include both, yes. Yes. Judge. Does that take you inside or outside those cases that provide an exception to the general rule that including means, for example? That including means, for example, it takes us outside of that, Your Honor. And the reason it takes us outside of it is because it does create an inconsistency between the classes or categories flanking the word including. The Federal ---- If we accept your construction of these two definitions in the two statutes, would we be reading the sentence to read vis-a-vis secondary schools, a nonprofit institutional day or residential school, including a for-profit charter school? Not specifically, Judge, if I understand the question. Is that exactly what you're arguing? Well, you would be reading it to include that, but it would be more inclusive. It would include all public charter schools. I mean, if we rule in favor of the State and the charter schools, wouldn't we be telling the Department of Education, that's how you have to read these two statutes, to say that nonprofit, including for-profit. Is that right? No, Your Honor, not in the case of noncharter schools. In the case of charter schools, yes. We're here just about charter schools, aren't we? Yes, we are. We are, Judge. In the case of charter schools, yes. You would be telling the Department of Education that they need to read it as nonprofit schools in the context of noncharter schools, but in the context of charter schools, that the focus is not on nonprofit versus profit. It is on public versus something else. What do we make of the fact that Congress in other sections of these statutes specifically recognized for-profit schools? Your Honor, there are other sections of the statutes that do specifically recognize those. The distinction is in the charter school context. And I'd refer the Court back to some of the legislative history we cited, I think, in Excerpt 13. We included Before we leave that point. Yes. Why shouldn't we look at that and say to ourselves, Congress knew how to say for-profit when they wanted to? It's the same statute. Your Honor, Congress has included the word for-profit. They certainly do know how to include that term. In the charter school context, that term, though, isn't the appropriate term to use to distinguish between what is an appropriate charter school for federal purposes and what is not. Instead, Congress has consistently focused on the public quality. The entire purpose behind the charter school expansion is to allow flexibility, to allow new types of schools to be developed that are not within the prior model of public education in this country. And therefore, Congress has focused on getting out support to those institutions that the states, using the flexibility Congress has given them, have determined to be of sufficient quality, of sufficient compliance, to qualify as a public institution. And so in this case, in the charter school context, Congress has decided to define or cut the dividing line at what a state determines to be a public institution rather than focusing on, for example, what would be in a more private school context, the public, excuse me, profit versus non-profit distinction. Let's assume we accept the argument there's some ambiguity in the statute. What's the next step in the analysis? Is it congressional history or what's the standard of appropriate deference to the agency interpretation? Which comes first? Your Honor, first comes the statutory interpretation analysis, even under Chevron and its progeny, Mead, and the other cases. Let's assume we're past that, that we accept your argument that it's ambiguous. What's the next step? The next step, Judge, is the legislative interpretation using the standard rules of construction such as the legislative history, the statutory purposes, the context in which the phrase is used, and looking at the language itself and determining whether it's capable or susceptible to the meaning that we put to it. All of those examples, Judge, we think fall in favor of defining for-profit charter schools within this context. Specifically, Your Honor, the Charter School Amendments Act legislative history included, again, I think it's tab 13 to our excerpts, includes a statement by the House Committee on Education and the Workforce that stated that, in pertinent part, depending on a particular state law, these schools may be established by non-profit or for-profit private or public organizations. Congress was well aware when it added this terminology to the statute that there was such a thing as for-profit charter schools being created as a public entity at the state level. So the legislative history itself indicates Congress was aware of the situation. Next, you can look at the legislative purposes. The legislative purposes include not only the purposes behind these particular definitions, but the IDEA and the No Child Left Behind provisions to which they apply. And those purposes are at least twofold. And one is to get down to all eligible students who require, under the congressional definitions, these type of special services, to get them these services and get them these services through federal financial support. Second, Your Honor. Is it possible that Congress actually thought about that and concluded that funneling these to get to students? Your Honor, there is no legislative history that indicates they had that thought. In fact, it indicates the opposite. And I would direct the Court's attention specifically to the legislative history under the, again, the Charter School Amendments Act where the Committee on Education and the Workforce indicated specifically their intent that charter schools that were operated or managed by for-profit entities would still be entitled to receive the federal funding. Your Honor, that is admittedly a different situation than we have here. But our position is that supports the implication that Congress also intended charter schools operated as a public institution would be entitled to those funds. The Department of Education through counsel has cited legislative history that they argue suggests the Let's assume that the congressional history, the legislative history is ambiguous. What's the next step? The next step, Judge, I think would be going to the purposes behind the statute, which I think I briefly alluded to, getting the money to all students that are eligible for these services, which the congressional record indicates and the record before the Court indicates. Do we get to the reasonableness, vel non, of the agency interpretation? You get to that point, Judge, when you determine that, in fact, there is no sufficient indication of congressional intent. That would be the first point at which you could reach into the deference side of the equation. If the statute is or these acts are unambiguous, I'm a little unclear as to whether or not your position is you still get to an inquiry of legislative history and purposes or whether that's no longer necessary. You seem to be acknowledging that in your argument today, but yet in the brief or briefs you filed, there was some suggestion as I read them that even where you have a statute consisting of plain meaning language, you need to get into some level of legislative or legislative history or inquiry to make sure that the statute comports with legislative intent. Which is it? Your Honor, yeah, let me clarify that. If, in fact, well, I would cite the Court to, I believe there's a decision out of the Ninth Circuit, if you'll give me one second, Idaho First National Bank versus a commissioner of the Internal Revenue Service, which indicates that in order to use a plain meaning analysis, the Court must determine that not only is there a plain meaning, normal meaning to the statute, but that it does comport with the legislative intent. So if there is contrary evidence from the legislative record, the Court needs to go that far. If there were not, Your Honor, if we couldn't provide that to you, if we couldn't provide any specific suggestion from the legislative record that there was some ambiguity here, you wouldn't need to go further. Okay. What you're saying then is if there is no ambiguity, you don't go into the legislative history. Yes, Your Honor. The ambiguity here, though, is acknowledged, obviously, by the Department of Education itself and its determination and by the use of the term public charter schools. Well, the ambiguity doesn't go so far as to acknowledge ambiguity in the clauses that we're discussing, though. I don't think the Department is taking that position. Your Honor, I'm specifically referring to their determination, the determination letter that they sent out on March 18th. That letter indicates that there, and I think the language they used is they admit there is some ambiguity to the statute because it does include the term public charter schools. That's what I'm referring to as opposed to their briefs. Yes. Your Honor, I am getting close to the point where I'm going to run out of time if I don't stop. But a couple more points I think that are important for the Court to note. With respect to the language, there are three key terms, and Judge Hawkins, I think you hit the nail right on the head, that we probably boil down to the nub of this argument being over what including means. You have non-profit school on the one side. We've offered the Court legislative history that suggests that Congress may not have intended non-profit to mean specifically not-for-profit, but it was really being inserted to protect certain non-public schools from federal regulation. But put that aside and assume that non-profit was intended to mean just not-for-profit. In order for the appellant's position to prevail, the Court need only find that public charter school does encompass the Arizona for-profit charter schools. And then, at least our position is that the term including and the definition of that as an expander rather than an illustration follows naturally because you have now two juxtaposed terms on either side of it which cannot be fully reconciled. And therefore, including is, or the Court would adopt what is a permissible interpretation of including as an expander. One other point on that issue. Your Honor, the Department has argued that in order to interpret including as an expander, the Court must find that the categories on either side are mutually exclusive of one another, that they can't possibly be reconciled in any concept. We do recognize here that there are certainly non-profit charter schools as well in that definition of public charter schools, at least in the Arizona context there are. However, Your Honor, we wanted to point out that there is no case law indicating or supporting the Department's position on that. There's no case law saying that it has to be mutually exclusive. Instead, the examples that are provided in the case law are examples, for the most part, where the two categories were mutually exclusive of one another. But you've told us at the start of the argument that you found no case that defines including to mean and where the second phrase included both meanings. I mean, the Fourth Circuit case talks about what to me provided the best example where it said drivers, license holders, comma, including applicants. Applicants, by definition, can't hold licenses. Or it could include people who are both, I suppose, people applying for renewals. But our research couldn't find any case where the second term included both. The cases have the terms seem to have to be mutually exclusive, right? Well, Judge, the closest we came, again, was the American surety case. And that is slightly different. It is not a mutually exclusive set, although the second set has multiple terms in it as opposed to one term. So it is a little bit different there. But, Judge, I think the fundamental point there is none of those decisions explain that we're turning the definition of including on the fact that it is mutually exclusive, the two terms are mutually exclusive. Likewise, there aren't any decisions out there where the courts have been faced with exactly what we're faced with here, in which they've said, no, we can't interpret including to be expansive because we don't have mutual exclusivity. We only have partial contradiction. And our position is, I guess, that we are probably in a new setting that hasn't been addressed by the courts yet. But the logic of those other cases where the courts have used including as expansive does fit our case as well. Do you want to save a little time for me? I do. Thank you, Your Honor. Thank you very much for your argument. We'll hear from the Department at this time. Mr. Litsky. May it please the Court. I'm Isaac Litsky with the United States Department of Justice here on behalf of the United States Department of Education. If I could just very briefly make a few points, Your Honor. It is our contention, and we think it's a strong contention, that the provisions at issue of the Individuals with Disabilities in Education Act and Elementary and Secondary Education Act explicitly restrict eligibility to receive federal grant monies under these programs to nonprofit institutional schools. That text is plain, and its meaning is bolstered threefold. First, by, as the district court stressed, by the history of the statutes and their legislative amendments. Second, in the context of the larger federal educational grant scheme, it's clear that where Congress does intend to make for-profit entities eligible to receive federal funds, it has done so and it can do so. And thirdly, Your Honor, the decision to restrict funds or to restrict eligibility to receive funds to nonprofit entities is grounded in sound policies that are appropriately left to Congress and to the Department of Education, the agency charged with administering and implementing these federal grant programs. The panel has nothing further, Your Honor. I don't see any other questions. Thank you. Thank you for your argument. Rebuttal. Just briefly, Judge, addressing specifically the question of sound policies, the policies I think that are implied in that argument are policies against giving a for-profit entity federal money or public money. I think that is adequately addressed in two ways. One is there's no indication that Congress had a fear of giving the for-profit charter schools federal money. And in fact, as we pointed out to the Court, there are many, many, many restrictions on uses of those monies that apply because these institutions are public schools. Because they are public schools, they are regulated by the state. They're subject to being, the charter is subject to being revoked. They're subject to the audit requirements and the financial management requirements that the state law imposes upon them like it does upon a regular public school district. And so the concern that the money will somehow be filtered out into somebody's profits isn't realistic for those purposes. Second point on that, Your Honor, is that the department concedes in their argument and they concede in their determination that the state of Arizona could, they believed, allow these schools to be reconstituted as something else but then take their federal money and provide it back to the for-profit entities to operate their schools under contract. And that, in fact, is consistent with the legislative history under the Charter School Amendments Act that's been cited to the Court. We would posit that it's difficult to reconcile that Congress would allow that where the money is now being provided directly to a for-profit entity that is not public, that is not subject to the same regulations at the state or federal level or the same audit requirements that a public entity is subject to. But the Congress would somehow deem it inappropriate for a public for-profit entity that is subject to all those requirements and restrictions to receive the money. In summary, Judge, we believe that the statutory purpose is an intent behind getting the money down to as many students as possible who have these special needs, who are, in fact, being serviced by these schools. And the focus of Congress on the public nature of charter schools compels the Court to define including as an expansive term and public charter schools as including the Arizona for-profits. Okay. Right down to the end of your time. Thank you. Thank you for your argument. Thank both sides for their arguments. A very interesting case. And the case just argued will be submitted for decision. And the Court will stand adjourned.
judges: Hawkins, Thomas, Miller